Filed 7/16/14  Magnum Builders v. Preferred Bank CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MAGNUM BUILDERS, | B248595 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC058308) |
| v. | |
| PREFERRED BANK, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cary H. Nishimoto, Judge.  Affirmed.

Monteleone & McCrory, William R. Baerg and Andrew W. Hawthorne, for Plaintiff and Appellant.

Meylan Davitt Jain Arevian & Kim, Vincent J. Davitt and Anita Jain, for Defendant and Respondent Preferred Bank.

Crafts Law Firm, Jeffrey L. Crafts and Warren Fujimoto, for Defendant and Respondent 1601 PCH.

_____

In October of 2008, Magnum Builders filed a mechanics lien claim against Shook Development Corporation (SDC) for improvements made to a commercial building known as the Hermosa Pavilion. More than two years later, Magnum filed "DOE" amendments naming Preferred Bank, which was SDC's lender, and 1601 PCH, the current owner of the property, as additional defendants.

Preferred Bank and 1601 PCH filed motions for summary judgment arguing that: (1) Magnum's mechanics lien had been extinguished by a foreclosure of the property in 2009; and (2) Magnum's claim was barred by the statute of limitations. The trial court granted the motions on both grounds and entered judgments in favor of the defendants. Magnum appeals the judgments. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Events Preceding Magnum Builders's Complaint*

Shook Development Corporation (SDC) was the owner of a commercial property commonly known as the "Hermosa Pavilion," located at 1601 Pacific Coast Highway. In October of 2003, Preferred Bank provided SDC a $15 million construction loan to conduct "core and shell" improvements at the Pavilion. SDC hired the Howard S. Wright Construction Company (HSW) to serve as the general contractor on the project. In March of 2004, SDC and HSW executed a written contract for the core and shell work, which HSW completed in 2005.

In September of 2005, SDC sought additional funds from Preferred Bank for further improvements to the Pavilion. Preferred Bank agreed to restructure the original construction loan into a traditional commercial real estate mortgage in the amount of $25 million. It also agreed to provide SDC an additional $5 million "junior loan." Both loans were secured by a deed of trust to the Pavilion that Preferred recorded on September 23, 2005.

In November of 2005, Magnum Builders entered into a contract with Keller Williams to perform improvements to a tenant suite located within the Pavilion.

2

Magnum completed the Keller Williams project in September of 2006 and subsequently executed a waiver and release acknowledging Keller had paid for the work in full.

Approximately six months later, on March 1, 2007, Magnum executed a separate contract with SDC to improve seven other tenant suites located within the Pavilion. The contract included language stating that it represented "the entire and integrated agreement between the parties . . . and supersede[d] prior negotiations, representations or agreements, either written or oral." The contract further stated that the "[t]he date of commencement of the Work shall be the date of this agreement." On July 6, 2007, Magnum and SDC amended the contract to add improvements to a restaurant located within the Pavilion.

One year later, on July 11, 2008, Magnum recorded a mechanics lien against the Pavilion in the amount of $321,000. The lien stated that Magnum had furnished "work and materials" to SDC that consisted of "Retail and restaurant tenant improvements For seven (7) retail stores and restaurant inclusive of auxiliary spaces."

### B. Summary of Magnum's Trial Court Pleadings

On October 10, 2008, Magnum filed a complaint against SDC for breach of contract, "foreclosure on mechanic's lien"[1] and various related claims seeking approximately $321,000 in unpaid labor and materials. The complaint alleged Magnum had entered into a written contract "to provide labor and materials to a work of improvement owned by [SDC] . . . commonly known and referred to as Hermosa Pavilion." Magnum's contract claim asserted SDC had breached the parties' written agreement "by failing to pay for said labor and materials to the work of improvement." Magnum's mechanics lien claim alleged it had complied with all the prerequisites

---

[1] The parties' pleadings and briefs use an apostrophe when referring to the term "mechanic's lien." In 2008, however, the California Legislature adopted legislation reorganizing and amending the mechanics lien law. Although the legislation retains the use of the term "mechanics lien," it "drops the apostrophe." (See 37 Cal. L. Revision Comm'n Reports 527, 559 (2007).) Accordingly, we use the term "mechanics lien" except when quoting the parties' briefs, evidence or prior case law.

necessary to perfect a mechanics lien, including serving "a Preliminary 20-day notice" on SDC "[w]ithin . . . 20 days after [it] first furnished equipment, materials labor and services." (See Civ. Code, § 3097 [describing 20-day preliminary notice requirement].[2])

Approximately four months after filing its complaint, Magnum filed an application for writ of attachment against the Pavilion and several SDC bank accounts, including two accounts at Preferred Bank. Magnum's application stated that, under its March 2007 contract with SDC, Magnum had agreed "to provide 'various tenant improvements' to a building located in 1601 Pacific Coast Highway . . . [¶] According to the terms of the agreement, Magnum agreed to complete tenant improvements for seven retail units in the building. Additionally, Magnum was to provide construction improvements to a restaurant . . . within the building per Contract Change Order # 1 dated July 6, 2007." Magnum's application asserted that it had furnished all of the labor and materials required under the contract "between approximately March 2007 and April 2008." Magnum also alleged that "[b]eginning on approximately April 15, 2008 and ending on June 30, 2008, [it] delivered several invoices to [SDC] for labor and materials provided, totaling $321,000.00. The invoices remain unpaid to date."

Magnum argued that a writ of attachment was necessary because SDC was "largely, if not entirely insolvent." In support of this assertion, Magnum provided a declaration from its president, Ernest Magana, who stated that he had personally attempted to collect the amounts due from the president of SDC, Gene Shook. Magana's declaration authenticated several emails from Shook acknowledging that SDC was

---

[2]     The version of the California mechanics lien law in effect at the time this suit was filed, found in former title 15 of part 4 of division 3 of the Civil Code (§§ 3082–3267), was repealed as of July 1, 2012, and replaced with part 6 of division 4 of the Civil Code (§§ 8000-9566). (Stats. 2010, ch. 697, § 16.) Section 8052 of the new law provides that "the effectiveness of a notice given or other action taken on a work of improvement before July 1, 2012, is governed by the applicable law in effect before July 1, 2012, and not by this part." Accordingly, prior law applies in determining the validity of the mechanic's lien claim in this case. All further statutory references are to former sections of the Civil Code. (See *Appel v. Superior Court* (2013) 214 Cal.App.4th 329, 334, fn. 2.)

4

having financial difficulties and was therefore unable to pay Magnum the full amount due under the parties' contract.

Shook's emails, which were attached to the declaration, contained statements indicating that Preferred Bank was SDC's lender and held an interest in the Pavilion. In an email dated June 16, 2008, Shook informed Magnum he was having difficulty "getting a lender to do a 3rd for $2,500,000 behind Preferred Banks position (1st and 2nd) of $35,500,000." In a second email dated July 2, 2008, Shook told Magana "[t]he banks are not lending and the bank that has my 1st and 2nd trust deed . . . will probably not be in business much longer. If you have any suggestions on how this can be resolved or know of someone that will lend money to get this resolved please let me know." In a third email dated August 1, 2008, Shook stated: "I do not have issues . . . with the work performed at the building. My lender, Preferred Bank as you know, did not fully fund what they say they would . . . This has left me in a cash crunch."

While Magnum's application for a writ of attachment was pending in the trial court, the Chicago Title Company, acting as trustee for Preferred Bank, mailed a "Notice of Default and Election to Sell Under the Deed of Trust" to SDC, Magnum and Magnum's counsel. The notice, which was mailed in June of 2009, stated that SDC owed Preferred Bank approximately $11 million and that failure to make immediate payment would result in a foreclosure sale of the property.

On October 13, 2009, the court granted Magnum's application for a writ of attachment. One week later, the Chicago Title Company mailed a "Notice of Trustee's Sale" to Shook, SDC, Magnum and Magnum's counsel stating that, on November 11, 2009, Chicago Title Company, acting pursuant to a deed of trust held by the beneficiary Preferred Bank, intended to sell SDC's property at public auction. The notice included an attachment containing a legal description of the property.

In response, Magnum sent a letter notifying Chicago Title Company it had obtained a writ of attachment against the property identified in the notice of foreclosure sale. The letter was signed by Magana. Chicago Title Company proceeded with the foreclosure sale on November 11, 2009, where the Pavilion was sold to a Preferred Bank

5

subsidiary known as "1601 Hermosa Pavilion." A trustees' deed upon sale was recorded on November 19, 2009. On July 23, 2010, 1601 Hermosa Pavilion recorded a grant deed conveying the property to 1601 PCH.

In February and March of 2011, Magnum filed two "DOE" amendments to its complaint naming Preferred Bank and 1601 PCH as defendants in the mechanics lien claim.[3]

### C. Respondents' Motions for Summary Judgment

#### 1. Respondents' motions for summary judgment and supporting evidence

In November 1, 2012, Preferred Bank and 1601 PCH filed motions for summary judgment on Magnum's mechanics lien claim. Preferred Bank argued its deed of trust, recorded in September of 2005, had priority over Magnum's mechanics lien, which was predicated on construction work that Magnum had commenced in March of 2007. (See § 3134; *Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 793 ["'Mechanics' liens "relate back" to the time work first commences on a project.'"].) In support, Preferred Bank provided a copy of its recorded deed of trust and the written contract between Magnum and SDC, which stated that the commencement date of Magnum's work of improvement was March 1, 2007. Preferred contended that because its deed of trust was senior to the mechanics lien, the lien had, as a matter of law, been extinguished by the foreclosure of the property in November of 2009. (See *Rheem Mfg. Co. v. United States* (1962) 57 Cal.2d 621, 625 (*Rheem*) ["a recorded deed of trust given as security for the purchase price of property or for other purposes, such as a construction loan, has priority over subsequent mechanics' liens and . . . a trustee's sale of the property covered by the deed of trust extinguishes such liens"].)

---

[3] Magnum's "DOE" amendments initially named Preferred Bank and 1601 PCH as defendants in every claim set forth in the complaint. However, on September 9, 2011, the trial court sustained demurrers without leave to amend in favor of Preferred and 1601 PCH on every claim asserted against them with the exception of the claim for foreclosure of mechanics lien. None of the claims dismissed pursuant to the demurrer are at issue in this appeal.

Alternatively, Preferred Bank argued the mechanics lien claim was time-barred because Magnum failed to name Preferred as a defendant within 90 days of recording the lien. (See § 3144; *Grinnell Fire Protection Systems Co. v. American Sav. & Loan Assn.* (1986) 183 Cal.App.3d 352, 354 [section 3144 requires plaintiff to name all parties to be bound by the foreclosure of the mechanics lien within 90 days of recording the lien].) Preferred asserted that the emails Magnum had submitted in support of its application for a writ of attachment demonstrated that Magnum knew of Preferred's interest in the property in June of 2008, several months before the complaint was filed. Magnum, however, did not file its "DOE" amendment naming Preferred as a defendant until February of 2011.

Preferred further argued that even if Magnum was unaware of Preferred's interest in the property at the time the complaint was filed, Magnum had a duty to file its DOE amendment within a reasonable time of acquiring that information. (See *Sobeck & Associates, Inc. v. B & R Investments No. 24* (1989) 215 Cal.App.3d 861, 870 [in mechanics lien case, DOE amendment does not relate back to original complaint if there is evidence of "unreasonable delay or specific prejudice to the defendant"].) Preferred contended the letter Magnum had sent to Chicago Title Company regarding the pending foreclosure sale of the Hermosa Pavilion demonstrated Magnum had actual knowledge of the deed of trust in October of 2009, but waited an additional 14 months before filing its DOE amendments.

1601 PCH filed a separate motion for summary judgment raising the same arguments. 1601 PCH argued that because Magnum was precluded from asserting its mechanics lien claim against Preferred, PCH 1601 had necessarily acquired the property free and clear of the lien: "Since 1601 PCH took title under [Preferred], and since [Magnum] failed to perfect its mechanic's lien against [Preferred], 1601 PCH took title to the property free and clear of [Magnum's] mechanics lien."

Preferred and PCH 1601 filed numerous documents in support of their motions for summary judgment, including, in part: (1) Preferred's recorded deed of trust; (2) Magnum's written contract with SDC; (3) Magnum's mechanics lien; (4) Magnum's

application for a writ of attachment; (5) the foreclosure notices Chicago Title Company had sent to Magnum and its attorney; (6) the October 2009 letter from Magnum to Chicago Title Company acknowledging receipt of the notice of foreclosure sale; and (7) Magnum documents indicating that it began billing work on the SDC project in 2007.

Preferred and PCH 1601 also filed supporting declarations from four witnesses. Preferred Bank vice president Brian Jurzcak provided a declaration explaining that he had overseen the original construction loan that Preferred had extended to SDC for the "core and shell work" work of improvement. Jurzcak stated that, in March of 2004, SDC entered into a contract with HSW to perform the core and shell improvement. According to Jurzcak, SDC sought additional funding approximately a year-and-a-half later for "various other improvements at the [property]." Jurzcak stated that Preferred agreed to restructure the original construction loan into a traditional commercial loan, which was secured by the deed of trust recorded in September of 2005. Jurczak also provided information regarding Preferred's 2009 foreclosure of the Pavilion and the subsequent sale of the property to 1601 PCH.

Preferred also provided a declaration from expert witness Laura Parker setting forth her opinion regarding (among other things) the value of the work that Magnum had provided to SDC. In addition, Preferred provided declarations from its attorney and the Chicago Title Company's custodian of records, which authenticated several of the documents submitted in support of the motions for summary judgment.

### 2. *Magnum's opposition to the motions for summary judgment and supporting evidence*

In its opposition, Magnum argued there was a triable issue of material fact whether its mechanics lien had priority over Preferred Bank's deed of trust, and had therefore survived the 2009 foreclosure. Magnum contended that although it had not entered into a formal contract with SDC until March of 2007, the evidence showed it had actually commenced work on the project in April of 2005. In support, Magnum cited declarations

8

from two of its employees stating that Magnum began working for SDC in April of 2005, and that this work was later incorporated into the parties' 2007 written agreement.

Magnum also argued it had made a prima facie evidentiary showing that the work it provided to SDC was part of the same "core and shell" work of improvement that HSW had commenced in 2004. According to Magnum, "[t]he work performed at the [Pavilion] consisted of two integrated phases. The first phase was the construction of the core and shell of a building. This work was primarily performed by HSW. . . . [Magnum's] work consisted of the construction activities necessary to build out the core and shell of the building to make various suites ready for tenant occupancy." Magnum contended that because its tenant improvements related to HSW's "core and shell" work of improvement, the mechanics lien related back to the date on which HSW commenced its construction in 2004.[4]

Finally, Magnum argued there was a triable issue of material fact whether its "DOE" amendments naming Preferred Bank and 1601 PCH were filed in a timely manner. Magnum asserted that the declarations submitted in support of its opposition demonstrated the company first became aware of Preferred's interest in the property during a deposition of Brian Jurzcak in December of 2010.

Magnum filed three declarations in support of its opposition. Thomas Workman, who began working at Magnum as a project manager in 2007, submitted a declaration signed in December of 2012 (the 2012 declaration) that incorporated statements he had made in a prior declaration filed with the court in 2011 (the 2011 declaration). Workman's 2011 declaration stated that Magnum had worked on the SDC project from "October 2005 through July 2008," which "consisted of . . . tenant improvements, within the core and shell done by [HSW]." In his 2012 declaration, however, Workman stated

---

**4**     Magnum also argued the work it performed for SDC involved the same "work of improvement" it had performed on Keller Williams's tenant suite within the Pavilion. Thus, according to Magnum, its lien related back to the date on which it had commenced work for Keller Williams. In its appellate brief, however, Magnum now concedes the work it provided to Keller Williams "was independent of the [SDC] work" and "has nothing to do with the issues on appeal."

9

he had conducted additional research that revealed Magnum had actually begun work on the SDC project in April of 2005 and continued to work "without a 60 day cessation of activity at the property, . . . through June-July of 2008." The 2012 declaration also stated that, in April of 2005, Magnum had hired Mike Reed to work on the SDC project.

Workman's 2012 declaration described several documents that allegedly showed Magnum "was performing work at the [Pavilion] long before [Magnum and SDC] entered into [the] formal written agreement [on March 1, 2007]." These documents, which were attached to the declarations as exhibits, included the following: (1) a copy of a check SDC had paid to Magnum on April 6, 2006; (2) a pay stub from Mike Reed indicating he was performing work for Magnum at the Pavilion in April of 2005; and (3) various emails and letters relating to the improvements Magnum had performed on Keller Williams's tenant suite.

Workman's 2012 declaration also contained discussion of the work that HSW had performed at the Pavilion, which allegedly "started in/around March of 2004 and continued to some time in or around May of 2005." According to Workman, "[t]he work for [Magnum] and [HSW] overlapped, both in terms of time and the actual scope of construction work in tenant suites and common areas serving all the tenants." In support of this statement, Workman listed ten "examples" of work HSW had completed during the "core and shell" project that were later modified or added onto by Magnum. Workman stated that he had acquired knowledge of these "examples" through "the A&E team, from my conversations with Ernest Magana and Mike Reed, and my review of project records."

Workman also asserted that neither he nor any other employee at Magnum had "actual knowledge of any secured interest held by Preferred Bank in the Property until December of 2010." Workman stated he first learned of Preferred's interest when he was asked "to attend the deposition of Brian Jurzcak . . . on December 10, 2010. At no time prior to that did I have any knowledge of any secured interest held in the Property by [Preferred Bank]."

10

Magnum's president, Ernesto Magana, provided a declaration that contained similar information. Magana stated, in part: "I (nor [Magnum]) had any knowledge of the secured interest held by Preferred Bank . . . between April 2005 when [Magnum] started work at the Project and December 2010 when . . . Thomas Workman . . . attend[ed] the deposition of Brian Jurczak . . . At that deposition, Mr. Workman became aware that [Preferred Bank] was claiming a secured interest in the Property." Magana further asserted that Magnum's work for SDC had started "in April 2005," which "included, but was not limited to . . . : on-site work, survey and analysis including lay-outs, detailing and value engineering cost application."

Magnum's third declaration was from its attorney, Andrew Hawthorne, which identified various discovery responses and other materials the defendants had provided during the litigation.

Preferred Bank and PCH 1601 filed objections to all three of Magnum's declarations and the attached exhibits. The defendants argued that Workman's entire declaration should be excluded because his statements constituted hearsay and related to events that occurred before he began working for Magnum. They also asserted that most of the statements in Magana and Hawthorne's declarations were inadmissible because they lacked proper foundation or constituted hearsay.

### 3. The trial court's ruling

At the hearing, the trial court issued a tentative ruling granting Preferred Bank and PCH 1601's motions for summary judgment. The court's ruling sustained the defendants' objections to substantial portions of Magnum's evidence. The court excluded almost every statement in Magana's declaration, admitting only those paragraphs in which Magana identified himself and his reasons for providing the declaration. The court also excluded a substantial majority of Workman's 2012 declaration. The only parts of Workman's declaration the court found to be admissible consisted of: (1) Workman's statement that he was incorporating his 2011 declaration; (2) the 2011 declaration; (3) Workman's statements regarding the timing and nature of the

11

core and shell work HSW had conducted at the Pavilion; (4) Workman's description of the alleged "overlap" between the work HSW and Magnum had performed for SDC; and (5) various statements related to the work Magnum had performed for Keller Williams and the manner in which Magnum administered its projects at the Pavilion. The court also excluded all of Hawthorne's declaration.

The court concluded that the admissible portion of the parties' evidence demonstrated "Preferred Bank'[s] . . . lien was senior in priority to [Magnum's] mechanic's lien which was then extinguished by Preferred Bank's 2009 foreclosure on its Deed of Trust. Thus, defendant 1601 PCH acquired the title free and clear of [Magnum's] mechanic's lien." The court explained that Preferred had presented evidence establishing its deed of trust was recorded in 2005, while Magnum's mechanics lien was "based on a work of improvement pursuant to a March 2007 contract." The court further explained that Magnum had failed to introduce any admissible showing that it commenced work on the project for SDC in April of 2005, or that the work was related to the "same work of improvement" HSW had commenced at the property in 2004.[5]

The court also ruled Preferred and 1601 PCH had demonstrated the mechanics lien claim was time-barred because Magnum failed to name Preferred Bank as a defendant "within 90 days of recordation of the lien." The court concluded Preferred's evidence showed that although the mechanics lien was recorded in July of 2008, Magnum failed to name Preferred or 1601 PCH as defendants until early in 2011. The court further explained that Magnum could not rely on its "DOE" amendments because the evidence showed "it was not actually ignorant of [Preferred]. [Magnum] had knowledge of [Preferred's] secured interests as early as June and July 2008 as evidenced by emails specifically setting forth [Preferred's] first and second priority positions. Therefore, [Preferred] had actual knowledge of [Preferred's] interest as early as June/July 2008.

---

**5**      The court also ruled Preferred had established the work Magnum had performed for Keller Williams, which occurred in 2005, was a separate work of improvement from the "second work of improvement [Magnum entered] into with [SDC in 2007]." As explained above (see *infra* footnote 4), Magnum does not challenge this finding on appeal.

[Magnum's] self-serving and conclusory attempt to now claim it did not know of the interest is belied by the specific documents demonstrating such knowledge. [Magnum] cannot circumvent the limitations period with a disingenuous DOE amendment."

The parties submitted on the tentative ruling without argument. On February 28, 2013, the trial court issued an order and judgment in favor of Preferred Bank. On March 13, 2013, the court entered a separate judgment in favor of PCH 1601.

## DISCUSSION

### A. *Legal Standards Governing Motions for Summary Judgment*

"Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment or summary adjudication is to be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant 'moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] A defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense." (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 894.) "'A prima facie showing is one that is sufficient to support the position of the party in question.' [Citation.] To satisfy its initial burden, a defendant must 'present evidence . . . and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence.' [Citation.] The defendant may satisfy this requirement in one of two ways: First, it may 'present evidence that conclusively negates an element of the plaintiff's cause of action.' [Citation.] In the alternative, defendant 'may . . . present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing.' [Citation.]" (*Hypertouch, Inc. v. ValueClick, Inc*. (2008) 192 Cal.App.4th 805, 838.)

"If the defendant 'carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.' [Citation.] 'The

13

plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists. . .' [Citation.]" (*Schmidt v. Bank of America* (2014) 223 Cal.App.4th 1489, 1497.) "'The party opposing the summary judgment must make an independent showing by a proper declaration or by reference to a deposition or another discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact if the moving party's evidence, standing alone, is sufficient to entitle the party to judgment. [Citations.] To avoid summary judgment, admissible evidence presented to the trial court, not merely claims or theories, must reveal a triable, material factual issue. [Citation.] Moreover, the opposition to summary judgment will be deemed insufficient when it is essentially conclusionary, argumentative or based on conjecture and speculation.' [Citation]." (*Trujillo v. First American Registry* (2007) 157 Cal.App.4th 628, 635.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

We review an order granting summary judgment de novo. (*Aguilar, supra,* 25 Cal.4th at p. 860; *Guz v. Bechtel National* (2000) 24 Cal.4th 317, 334.)[6] In conducting our review, "we take the facts from the record that was before the trial court when it ruled on that motion" and "'consider[] all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]" (*Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1037 (*Yanowitz*).)

---

**6**    We reject Preferred Bank's unsupported assertion that the abuse of discretion standard of review applies to an order granting or denying summary judgment on a claim for foreclosure of mechanics lien. We are aware of no authority suggesting that summary judgment orders involving mechanics liens claims are subject to this standard of review.

14

### B. Summary of Mechanics Lien Law

"The purpose of a mechanic's lien is to secure payment to a person, who benefits another's property, by giving the person a lien on the real property that has increased in value from the improvement. [Citations.] Under California's mechanic's lien law, a mechanic's lien attaches to any interest in a work of improvement and the real property on which it is situated. [Citation.] . . . . To preserve a mechanic's lien, the lien claimant must record a claim of lien within certain time periods following the completion or cessation of work. [Citations.] The recordation of the claim of lien provides constructive notice of the lien to subsequent purchasers and encumbrancers. [Citation.] [¶] Although the claim of lien may be recorded after the work is completed, the lien relates back to the date the first labor or material was furnished for the work of improvement. . . ." (*Forsgren Associates, Inc. v. Pacific Golf Community Development LLC* (2010) 182 Cal.App.4th 135, 145-146 (*Forsgren*).)

"Once recorded, the mechanics' lien constitutes a direct lien [citation] on the improvement and the real property to the extent of the interests of the owner or the person who caused the improvement to be constructed [citations]. The lien is subordinate to recorded encumbrances antedating the commencement of the work of improvement [citation], but takes priority over all subsequent encumbrances [citation]." (*Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 808; see also *Idaco Lumber Co. v. Northwestern Sav. & Loan Ass'n.* (1969) 265 Cal.App.2d 490, 499, fn. 3 (*Idaco Lumber*) ["[a]s a general rule the deed of trust held by a lender or other party will have priority over mechanics' liens if the deed of trust held by the lender was recorded prior to the time the work of improvement first commenced"].) Thus, "a recorded deed of trust given as security for the purchase price of property or for other purposes, such as a construction loan, has priority over subsequent mechanics' liens and . . . a trustee's sale of the property covered by the deed of trust extinguishes such liens." (*Rheem, supra,* 57 Cal.2d at p. 625; see also *Valley Investments v. BancAmerica Commercial Corp.* (2001) 88 Cal.App.4th 816, 824 ["A valid foreclosure terminates all interests in the real estate junior to the mortgage being foreclosed [citation], but it does not terminate

15

interests senior to the mortgage"]; *Idaco Lumber, supra,* 265 Cal.App.2d at p. 499 ["mechanics' . . . lien . . . [can] be extinguished by foreclosure of [a] lender's first deed of trust which has priority"].)

### C. *Preferred Bank Established Its Deed of Trust Had Priority Over Magnum's Mechanics Lien and that the Lien Was Therefore Extinguished as a Result of the 2009 Foreclosure*

The trial court ruled that the parties' evidence demonstrated Preferred's deed of trust had priority over the mechanics lien because the deed was recorded prior to the commencement of Magnum's work for SDC. The trial court further ruled that the parties' evidence showed Preferred had conducted a valid foreclosure of its deed of trust in 2009, thereby extinguishing Magnum's junior lien.

On appeal, Magnum does not dispute that Preferred recorded its deed of trust in September of 2005 and subsequently conducted a valid foreclosure that extinguished all junior liens against the property. Magnum also does not challenge the trial court's finding that Preferred satisfied its initial burden by producing prima facie evidence that the mechanics lien did not attach to the property until March 7, 2007, which is the commencement date set forth in the written contract between Magnum and SDC.

Magnum argues, however, that the evidence it provided in support of its opposition establishes a triable issue of material fact whether its mechanics lien was senior to Preferred's deed of trust, and therefore survived Preferred's 2009 foreclosure. Magnum contends that although it did not enter into a formal contract with SDC until 2007, a reasonable trier of fact could find that the "work of improvement" described in that contract actually commenced before Preferred recorded its deed of trust in September of 2005. (See *Aguilar, supra,* 25 Cal.4th at p. 850 ["There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof"].) Magnum provides two theories regarding the commencement date of its "work of improvement." First, it asserts the trier of fact could choose to credit statements set forth in the declarations of Workman and Magana

16

indicating that Magnum began working on the SDC project in April of 2005. Second, Magnum asserts the trier of fact could find the work it provided to SDC was part of the "core and shell" work of improvement that HSW commenced in March of 2004.

### 1. *Magnum has waived any argument regarding the trial court's evidentiary rulings*

Before addressing the merits of these arguments, we must first assess what portion of Magnum's evidence we may consider on appeal. In conducting our review of an order granting our denying a motion for summary judgment, we generally "'consider[] all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' [Citation.]" (*Yanowitz, supra,* 36 Cal.4th at p. 1037.) At the motion hearing, the trial court sustained objections to large portions of the declarations Magnum filed in support of its opposition. Although Magnum's opening appellate brief does not challenge (or even reference) those evidentiary rulings, it repeatedly cites to excluded statements appearing in the declarations of Thomas Workman and Ernest Magana.

Preferred Bank and 1601 PCH argue that Magnum's failure to challenge the trial court's evidentiary rulings in its opening brief constitutes an abandonment of any challenge to those rulings. (See generally *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 & fn. 4 [plaintiff's "fail[ure] to mention the . . . evidentiary objections that were sustained to his supporting declarations and documents" constituted a waiver of "any issues concerning the propriety of the trial court's evidentiary rulings"].) In its reply brief, Magnum disagrees, arguing that it impliedly challenged the court's evidentiary rulings "by . . . rel[ying] on the [excluded] evidence" its opening appellate brief. It further asserts that, when reviewing a summary judgment ruling, an appellate court has a sua sponte duty to conduct an evaluation of the trial court's evidentiary rulings. Both arguments lack merit.

First, we reject Magnum's assertion that a party appealing a summary judgment ruling may properly preserve his or her right to challenge the trial court's evidentiary

17

rulings by merely citing to the excluded evidence in an appellate brief. It is well established that a party who fails to "attack the [trial court's evidentiary] rulings on appeal . . . forfeit[s] any contentions of error regarding them. [Citation.]" (*Frittelli, Inc. v. 350 North Canon Drive* (2011) 202 Cal.App.4th 35, 41; see also *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015 [party waived "any issues concerning the correctness of the trial court's evidentiary rulings" by failing to "challenge the trial court's ruling sustaining . . . objections to certain evidence offered in opposition to the summary judgment motion"]; *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 740, fn. 4.) Thus, when an appellant fails to challenge evidentiary rulings barring evidence submitted in support or opposition of summary judgment, "we exclude this evidence from our review of the summary judgment motion." (*Wall Street Network, Ltd. v. New York Times Co*. (2008) 164 Cal.App.4th 1171, 1181.)

Even if Magnum believed it had preserved its right to challenge the trial court's evidentiary rulings by relying on the excluded evidence in its briefing, Magnum has never provided any argument explaining why the court's rulings were incorrect. "'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.] 'We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*Cahill v. San Diego Gas & Elec. Co*. (2011) 194 Cal.App.4th 939, 956; see also *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 ["This court is not inclined to act as counsel for . . . appellant and furnish a legal argument as to how the trial court's rulings ... constituted [error]"].) Because Magnum has never set forth any legal basis for determining that the trial court's evidentiary rulings were erroneous, it has forfeited any challenge to those rulings.

We also reject Magnum's suggestion that, when reviewing an order granting or denying a motion for summary judgment, appellate courts have an "[i]nherent" duty to "analy[ze] . . . the propriety of the superior court's ruling on . . . evidentiary objections."

18

Although Magnum is correct that "we independently review the grant of summary judgment to determine the existence of triable issues of fact [citation]" (*Frittelli, supra,* 202 Cal.App.4th at p.41), this inquiry is "limited to issues which have been adequately raised and supported in plaintiffs' brief. [Citations.]" (*Schmidt, supra,* 223 Cal.App.4th at p. 1511; see also *Frittelli, supra,* 202 Cal.App.4th at p. 41 ["Although we independently review the grant of summary judgment to determine the existence of triable issues of fact [citation], our inquiry is subject to two constraints. First, we assess the propriety of summary judgment in light of the contentions raised in [appellant's] opening brief. [Citation.] Second, to determine whether there is a triable issue, we review the evidence submitted in connection with summary judgment, with the exception of evidence to which objections have been appropriately sustained. [Citation.]"].)

Because Magnum has not challenged the evidentiary rulings barring the declarations of Andrew Hawthorne and significant portions of the declarations of Thomas Workman and Ernest Magana, we exclude this evidence from our review.[7]

### 2. *There is no admissible evidence that Magnum commenced its work for SDC prior to September of 2005*

Magnum initially argues that the evidence it submitted in opposition to defendants' motions for summary judgment establishes the existence of a triable issue of material fact whether it commenced its work for SDC prior to the date on which Preferred recorded its deed of trust. Magnum contends that although it did not execute a

---

[7]    Magnum's opening appellate brief does argue that the trial court erred in overruling over 130 evidentiary objections it raised to the declarations of Preferred Bank's witnesses. Magnum's brief, however, presents no argument explaining the nature of the objections it raised in the trial court or why the court's rulings were erroneous. Instead, the brief states only that Magnum "renews these objections on appeal on the grounds stated in the objections." As explained above, when an appellant raises a point, "but fails to support it with reasoned argument and citations to authority, we treat the point as waived.'" [Citation.]" (*Cahill, supra,* 194 Cal.App.4th at p. 956.) Magnum's statement that it is "renewing" its objections to Preferred's evidence does not constitute "reasoned argument." Magnum has therefore waived any objection to the trial court's evidentiary rulings regarding Preferred's evidence.

formal written contract with SDC until 2007, it made a prima facie evidentiary showing that it began performing the work set forth in that contract in April of 2005.

All of the evidence Magnum has cited in support of this argument was excluded by the trial court.[8]  Magnum has therefore failed to cite any admissible evidence that it commenced its work for SDC in April of 2005.

Moreover, the admitted portion of Magnum's evidence contains statements confirming that it did not commence work for SDC until after Preferred recorded its deed of trust.  In Workman's 2011 declaration, which was incorporated into his 2012 declaration (and admitted by the trial court), he stated that Magnum performed labor for SDC "from October 2005 through July 2008."  Although Workman's 2012 declaration asserts he conducted additional research showing Magnum actually commenced work for SDC in April of 2005, rather than in October of 2005, the trial court sustained an objection to this statement.  Thus, the admissible portion of Workman's declarations indicate Magnum commenced work for SDC in October of 2005, which is after Preferred Bank recorded its deed of trust.

> 3.  *Magnum failed to make a prima facie evidentiary showing that its mechanics lien relates back to the date HSW commenced work at the Pavilion*

Magnum alternatively contends it made a prima facie evidentiary showing that its mechanics lien relates back to the date HSW began working on the "core and shell" improvement at the Pavilion, which occurred in 2004.  Although Magnum and HSW entered into separate construction contracts with SDC, Magnum argues the trier of fact could nonetheless conclude both contracts involved the same "work of improvement."  Magnum further asserts that under such circumstances, its mechanics lien would relate back to the date on which HSW commenced the work of improvement, not the date on

---

[8]    This excluded evidence appears in paragraph 15 of Workman's 2012 declaration and paragraphs 3 and 8 of Magana's declaration.  The trial court sustained objections to all three of those paragraphs and the exhibits referenced within them.

which Magnum's own labor and materials were incorporated into the work of improvement.

Preferred, however, argues the mechanics lien cannot relate back to the date HSW commenced the "core and shell" improvement because Magnum did not begin working for SDC until after that project was completed. In support, Preferred cites section 3086, which states that a work of improvement is deemed "complete" if there is a continuous 60-day cessation of labor. According to Preferred, the evidence shows there was a "gap" of more than 60 days between the time HSW completed its project and the time Magnum started working for SDC.

### a. *Summary of applicable law*

A mechanics lien attaches on the date the first labor or construction material is furnished for the "work of improvement." (See § 3134; *Forsgren, supra*, 182 Cal.App.4th at pp. 146-147.) Civil Code section 3106 states, in relevant part: "Except as otherwise provided in this title, 'work of improvement' means the entire structure or scheme of improvement as a whole."

Because the liens of all mechanics relate back to the date the first visible work began on a work of improvement, a mechanics lien has priority over any interest recorded after the work commenced even if a particular mechanics work was not started until after the interest was recorded. (See *Forsgren, supra*, 182 Cal.App.4th at p. 146; *Santa Clara Land Title Co. v. Nowack & Associates, Inc.* (1991) 226 Cal.App.3d 1558, 1565 [when a work of improvement commences before a deed of trust is recorded, "the lien of the deed of trust is junior to every mechanic's lien regardless when the work or materials were actually incorporated into the project by the mechanic claiming the lien"].) Thus, "[w]here there are separate direct contracts with the owner, but the phases are part of one work of improvement, the liens of mechanics working on the later phases still take priority from the date the work first commenced on the first phase." (5 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 11:137, p. 11-425 [Miller & Starr].)

However, under section 3086, subdivision (c), a work of improvement is deemed "complete" if there is a continuous 60-day cessation of labor. Thus, if work ceases on an

21

uncompleted project for sixty days, but resumes thereafter, "a new date for priorities . . . begins with the commencement of the new work. The liens of mechanics who perform work or supply materials to the project after the 60-day period of labor cessation have priority from the date the work starts again." (Miller & Starr, *supra*, § 11:140, pp. 11-431 and 11-432; see also *Remington v. Mulholland* (1931) 118 Cal.App. 479; *In re Showplace Square Loft Co.* (Bkrtcy. N.D. Cal. 2003) 289 B.R. 403, 407 [under section 3086, "when work ceases completely on an uncompleted project for sixty days but resumes thereafter, 'a new date for priorities also begins with the commencement of the new work.' [Citation.] In other words, the 'off-record' priority of the mechanics lien will relate back only to the re-commencement of work"].)

> b. *Magnum failed to make a prima facie showing that its mechanics lien relates back to the date HSW commenced the "core and shell" project*

The record contains the following evidence regarding the improvement HSW contracted to perform for SDC. Preferred Bank employee Brian Jurzcak's declaration explains that, in October 2003, Preferred provided SDC a $15 million construction loan "for the development of [a] 'core and shell' work of improvement . . ." Jurzcak states that SDC hired HSW "as the general contractor of the 'core and shell' work of improvement through a contract with SDC signed in March 2004." In September of 2005, Preferred provided SDC additional funds for "further improvements to the Property." SDC subsequently entered into its contract with Magnum for "tenant improvements for seven retail units in the building [and] . . . construction improvement to a restaurant located at the property."

The only evidence Magnum provided regarding HSW's work for SDC appears in Thomas Workman's 2011 and 2012 declarations. Workman's 2011 declaration contains only one reference to HSW's work: "The [Magnum] work [for SDC] consisted of . . . tenant improvements . . . within the core and shell done by [HSW]." His 2012 declaration contains additional information, stating that that "[t]he work of HSW. . . continued to some time in or around May of 2005" and "was closely intertwined with the

22

work of [Magnum]." Paragraph 11 of the 2012 declaration provides several "examples" of work that purportedly illustrate the substantial "overlap" in "the scope of construction work" that Magnum and HSW performed for SDC.

The parties' evidence does not establish there is a triable issue of material fact whether the mechanics lien relates back to the date HSW commenced its core and shell "work of improvement." As explained above, when work ceases on an uncompleted project for 60 days but resumes thereafter, priority of the mechanics lien will relate back only to the re-commencement of work. Workman's 2012 declaration states that HSW commenced work on the "core and shell" project in March of 2004 and continued working until around "May of 2005." Workman's 2011 declaration states that Magnum commenced its work for SDC no earlier than October of 2005, which is approximately four months after Workman alleges HSW stopped working on the project.[9] Magnum has never alleged any other party provided labor and materials on the work of improvement. Thus, based on Magnum's own evidence, work on the project stopped in May of 2005 and resumed more than 60 days later, in October of 2005. This would result in a priority date of October 2005, which is after Preferred recorded its deed of trust.[10]

In sum, Magnum has failed to introduce evidence establishing there is a triable issue of material fact whether its lien had an earlier priority date than Preferred's deed of

---

[9]    As discussed above, the trial court excluded conflicting statements in Workman's 2012 declaration asserting that Magnum actually began working for SDC in April of 2005. Accordingly, "we exclude this evidence from our review of the summary judgment motion." (*Wall Street Network, Ltd., supra,* 164 Cal.App.4th at p. 1181.)

[10]    Preferred and 1601 PCH also argue that Magnum failed to make a prima facie evidentiary showing that the tenant improvements it constructed for SDC were part of the "core and shell" work of improvement that HSW commenced in 2004. Having concluded that Magnum's own evidence demonstrates it did not begin working for SDC until more than 60 days after HSW stopped working, we need not address that alternative argument.

23

trust.  We therefore affirm the trial court's judgments in favor of Preferred and 1601 PCH.[11]

## DISPOSITION

The judgments in favor of respondents Preferred Bank and PCH 1601 are affirmed.  The respondents shall recover their costs on appeal.


ZELON, J.

We concur:


PERLUSS, P. J.


SEGAL, J.[*]

---

[11]     Because we uphold the trial court's judgment ruling on this basis, we need not address defendants' alternative contention that Magnum's mechanics lien claim is barred by the statute of limitations.

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.